**In re Philip Jerome NOWAK, Kristen Kay Nowak, Debtors.**

**Bankruptcy No. WF7–84–00745.**

United States Bankruptcy Court, W.D. Wisconsin.

Sept. 18, 1984.

Robert F. Dopkins, Wausau, Wis., for debtors.

Thomas W. Batterman, Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C., Wausau, Wis., for Bank of Edgar.

## FINDINGS OF FACT, CONCLUSION OF LAW AND ORDER AVOIDING LIEN

WILLIAM H. FRAWLEY, Bankruptcy Judge.

Debtors Philip Jerome Nowak and Kristen Kay Nowak, by Attorney Robert F. Dopkins, having requested the avoidance of a lien; and a hearing having been held; and the Debtors appearing by counsel; and The Bank of Edgar appearing by Attorney Thomas W. Batterman of Terwilliger, Wakeen, Piehler, Conway & Klingberg, S.C.; and briefs having been filed; the Court, being fully advised in the premises, FINDS THAT:

1. Debtors Kristen Kay Nowak and Philip Jerome Nowak obtained a loan from the Bank of Edgar and granted the Bank a security interest in Philip's automobile. The loan was used—at least in part—to satisfy a Thorp Finance purchase money security interest in said automobile.

2. Debtor Philip Nowak is a salesman and office manager for Hydrodynamics. Hydrodynamics markets residential air purification systems. Sales presentations are made at the homes of prospective purchasers.

3. Philip's duties include selling and hiring, training and supervising additional sales people.

4. There was evidence at the hearing that Philip received 80% of his income from his own sales but that 90% of his time "in the field" was spent with other sales people. Philip testified that it would be possible for him to travel with the other salespeople when joint calls are made.

5. Philip's supervisor testified that a vehicle is a necessity to a Hydrodynamics sales operative because of the extensive sales area and the need to transport bulky equipment to prospects' homes. Hydrody-

namics has no company cars and requires that new employees own a suitable automobile of their own.

6. On their original April 19, 1984, Schedule B–4, the Debtors claimed that Philip's automobile was exempt under 11 U.S.C. sec. 522(d)(1), (2) & (4). The value claimed as exempt was $3,000.

7. At the July 18, 1984, hearing on the matter at bar the parties agreed that the value of the automobile is approximately $4,600.

8. On August 31, 1984, the Debtors filed an amended Schedule B–4 claiming Philip's automobile had an exempt value of $4,600.[1]

### Discussion

9. Under 11 U.S.C. sec. 522(f)(2)(B), a debtor may avoid a lien to the extent it impairs an exemption if the lien is a nonpossessory, nonpurchase-money security interest in any tool of the trade of the debtor.

10. *Novation.* Even assuming, as the Bank argues, that its loan to the Debtors was a novation of the Debtors' purchase-money debt with Thorp Finance, the Bank's lien is a nonpossessory, nonpurchase-money security interest. *See In re Gayhart,* 33 B.R. 699, 699–700 (Bankr.N.D. Ill.1983) ("Where [novation] has been found to exist, the purchase-money character of the security is deemed destroyed." (footnote omitted)).

11. *Motor Vehicle.* The Bank argues that an automobile can not be a tool of the trade within the meaning of Section 522(f)(2)(B) because it is a motor vehicle. *See In re Sweeney,* 7 B.R. 814, 819 note 4 (Bankr.E.D.Wis.1980) (dicta), *rev'd. on other grounds sub nom. In re Gifford,* 669 F.2d 468 (7th Cir.1982).

12. A motor vehicle may be a tool of the trade under Section 522(f). *In re Pockat,* 6 B.R. 24 (Bankr.W.D.Wis.1980).

---

**1.** The Debtors did not give the Bank actual notice of the amendment. However, in light of the Bank's knowledge of the actual value of the automobile, Paragraph 7 *supra,* the Bank had constructive notice of the Debtors' subsequent amendment to conform their schedules to reflect this value. *See generally* Fed.R.Bankr.P. 1009 (affected entities are to be given notice of amendments).

13. *Tools of the Trade.* "[A] motor vehicle is a tool of the trade only if it is 'necessary to, and is used by the debtor to carry on his trade.'" *In re Dempsey,* 39 B.R. 561, 562 (Bankr.E.D.Pa.1984) (citations omitted).

■ 14. Section 522(f) "protects the debtor's exemptions". H.R.Rep. No. 595, 95th Cong., 1st Sess. 362 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6318; S.Rep. No. 989, 95th Cong., 2nd Sess. 76 (1978) (under subsection (e)), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5862. Mindful of "[t]he well-known rule that exemption statutes are to be liberally construed", *In re Sweeney,* Paragraph 10 *supra,* at 819, this Court will find that the automobile in question is necessary to, and is used by Philip to make a significant portion of his sales calls.

■ 15. *Access to 11 U.S.C. sec. 522(d)(5).* Debtors may avoid liens on tools of the trade in excess of the $750 limit under Section 522(d)(6) by use of the "wild card" exemption under Section 522(d)(5). *In re Hollinsed,* 84–0113–7 (Bankr.W.D. Wis. June 12, 1984) (attached to this Decision as an Appendix).

■ 16. *Amount.* Fed.R.Bankr.P. 1009 provides that, with notice to the trustee and to affected entities, a "schedule ... may be amended by the debtor as a matter of course at any time before the case is closed." Nevertheless, when a trustee or creditor would be prejudiced by an amendment of a debtor's schedule of exemptions, the Court may properly deny an amendment. *In re Drake,* 39 B.R. 75 (Bankr.E.D. N.Y.1984).

■ 17. This Court considers four factors to determine the propriety of amendments to exemption schedules:

(a) Whether an adverse party's rights will be prejudiced if an amendment is allowed.

(b) Whether not allowing the amendment will cause undue hardship to the debtor.

(c) Whether there is a reasonable excuse for not claiming the exemption on the original schedule.

(d) Whether there is a reasonable excuse for any delay in seeking the amendment.

*See In re Kochell,* 23 B.R. 191, 192 (Bankr. W.D.Wis.1982) (cases collected).

■ 18. Here, where both parties agreed that the fair market value of the automobile exceeded the Debtors' estimated value, the equities weigh in favor of permitting the amendments. *Cf. Fitzgerald v. Davis,* 729 F.2d 306, 308 (4th Cir. 1984) ("a sales price greatly in excess of [the Debtors'] estimate is the more reliable evidence of the 'value' defined in § 522(a)(2).").

## CONCLUSION OF LAW

The lien of the Bank of Edgar should be avoided to the extent that it impairs the exemption of Philip's automobile to which the Debtors are entitled.

## ORDER

IT IS ORDERED THAT the lien of the Bank of Edgar on Debtor Philip Jerome Nowak's 1980 Oldsmobile Cutlass be, and the same hereby is, AVOIDED to the extent that it impairs the exemption of said automobile to which the above captioned Debtors are entitled.

## APPENDIX

### UNITED STATES BANKRUPTCY COURT

### WESTERN DISTRICT OF WISCONSIN

IN THE MATTER OF: DOUGLAS L. HOLLINSED and RITA M. HOLLINSED, Debtors.

WILLIAM J. RAMEKER,
Trustee, Plaintiff,

v.

DOUGLAS L. HOLLINSED, RITA M. HOLLINSED and TINA M. BRISTOL, Defendants.

IN ADVERSARY PROCEEDING NO. 84–0113–7

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

The complaint of the trustee, William J. Rameker, against the debtors, Douglas L.

Hollinsed and Rita M. Hollinsed, and against Tina M. Bristol, having come on for trial before the court on the 17th day of May, 1984, after due notice to each of the parties, the court makes the following findings of fact, conclusions of law and its judgment in the above-captioned case:

## FINDINGS OF FACT

1. Douglas L. Hollinsed and Rita M. Hollinsed, residing at Route 3, Box 46, Baraboo, Wisconsin, filed their voluntary petition and schedules under chapter 7, Title 11, United States Code, on March 16, 1984.

2. The defendant, Tina M. Bristol is the daughter of Rita M. Hollinsed and the stepdaughter of Douglas L. Hollinsed.

3. The debtors' bankruptcy schedules and statement of financial affairs disclosed that on or about January 2, 1984, the debtors executed and delivered to Tina M. Bristol, a security agreement purporting to convey a security interest in a certain 1973 Peterbilt tractor, V.I.N. 49781P; and that the consideration for said transfer consisted of loans from Tina M. Bristol to Douglas and Rita Hollinsed during the period from 1980 through 1982, in the approximate amount of $8,000, plus interest.

4. The transfer of the security interest occurred within ninety days of the date of the filing of the debtors' petition and schedules in bankruptcy case no. MM7–84–00478, on March 16, 1984.

5. The above-mentioned security interest was not perfected as required by WIS STAT. § 342.19 on the date of the filing of the debtors' petition and schedules.

6. The payments made by Tina M. Bristol to Douglas and Rita Hollinsed were not used by them to acquire any interest in the 1973 Peterbilt tractor.

7. The debtors' amended schedule B–4 as of the trial of this case claimed exemptions relating to the subject Peterbilt tractor, as follows: husband—§ 522(d)(6) $600; husband—§ 522(d)(5) $4,825; wife—§ 522(d)(6) $750; wife—§ 522(d)(5) $4,825.

8. The fair market value of the 1973 Peterbilt tractor as disclosed on the debtors' schedule A–2, was $9,000.

9. The Peterbilt tractor is necessary for both of the debtors to reestablish their business of hauling goods.

## CONCLUSIONS OF LAW

10. The grant of a security interest in the debtors' 1973 Peterbilt tractor to Tina M. Bristol on January 2, 1984 was a preference avoidable under 11 U.S.C. §§ 544 and 547.

11. The trustee is entitled to avoid the preference and preserve the transfer for the benefit of the estate. 11 U.S.C. § 551.

12. Notwithstanding 11 U.S.C. § 551, the debtors may exempt the property to the extent they could have avoided such a transfer under 11 U.S.C. § 522(f). 11 U.S.C. § 522(g)(2), (i)(2). *In Re Dipalma*, 24 B.R. 385 (Bankr.D.Mass.1982).

13. 11 U.S.C. § 522(f)(2)(B) allows the debtors to avoid the fixing of a nonpossessory, nonpurchase money security interest in any implements or tools of the trade of the debtor to the extent such a security interest impairs an exemption to which the debtor would otherwise be entitled. *In Re Dipalma, supra.*

14. No appellate decision binding on this court has yet ruled on the issue of enhancing debtors' right to lien avoidance by use of the "wild-card" provision of 11 U.S.C. § 522(d)(5). In *In Re Sweeney*, 7 B.R. 814 (Bankr.E.D.Wis.1980), the bankruptcy judges of the Eastern District of Wisconsin held that the lien avoidance provisions of 11 U.S.C. § 522(f) did not extend to property avoided under 11 U.S.C. § 522(d)(5), reasoning that the legislative purpose of the lien avoidance provision was to prevent creditor coercion of reaffirmation agreements by the threat of repossession of consumer goods of small resale value. In *Augustine v. United States*, 675 F.2d 582 (3d Cir.1982), expressly approving

aggregation of exemptions for purposes of lien avoidance, the Third Circuit Court of Appeals rejected the reasoning that lien avoidance under § 522(f) is based solely upon prevention of creditor coercion by threat of repossession of consumer goods of small value, since in including tools of the trade in § 522(f), "Congress could not have been unaware that such tools might well be more expensive than ordinary household goods." 675 F.2d 586. Other courts have adopted the view that lien avoidance is applicable, under appropriate circumstances, to property exempted under the omnibus provision of § 522(d)(5). In *In Re Dipalma, supra,* the court reasoned that the purpose of § 522(f) lien avoidance was to ensure the debtor's rehabilitation, and shift the cost of rehabilitation, to a certain extent, to creditors. 24 B.R. at 390. In the light of the rule of liberal construction of exemption statutes and the lack of an express restriction by Congress of lien avoidance to the categories of property identified in 11 U.S.C. § 522(f)(2) [corresponding to § 522(d)(3), (6) and (9)], lien avoidance is applicable to all categories of property subject to exemption under § 522(d).

15. The debtors may avoid the lien on their 1973 Peterbilt tractor created by the transfer of the security interest to Ms. Bristol and preserved by the trustee to the extent of the exemptions claimed by their amended schedule B-4 on file with the court at the time of trial.

Upon the foregoing findings of fact and conclusions of law, it is hereby

ORDERED, ADJUDGED AND DE-CREED, that this adversary proceeding be dismissed, without costs, and that the debtors may exempt their interest in the subject Peterbilt tractor, up to a value of $11,-000.

Dated this 12th day of June, 1984.

/s/  Robert D. Martin
ROBERT D. MARTIN
U.S. BANKRUPTCY JUDGE